UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVAN VANDERLOO,<br><br>    Plaintiff,<br><br>v.<br><br>ALLSTATE NORTHBROOK INDEMNITY COMPANY,<br><br>    Defendant. | Case No. 23-cv-04964-EKL<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 31 |

This action arises from Plaintiff Evan Vanderloo's injury from a car accident and his underinsured motorist claim against Defendant Allstate Northbrook Indemnity Co. ("Allstate") that followed. Although Allstate ultimately paid the full policy limit for Plaintiff's underinsured motorist claim, Plaintiff claims that Allstate unreasonably delayed payment and forced him to undergo a lengthy claims process. Allstate moves for summary judgment on all claims. Mot. for Summ. J., ECF No. 31 ("MSJ"). Having carefully reviewed the parties' briefs and the evidentiary record, the Court GRANTS Allstate's motion.[1]

I.  **BACKGROUND**[2]

At around 1:52 a.m. on February 24, 2016, Plaintiff was involved in a rear-end automobile accident. Pl.'s R. at 5, 7. Plaintiff was traveling as a front-seat passenger in Jared Gimlan's vehicle when it was struck by another vehicle. *Id*. at 7. At the time of the collision, Plaintiff was looking down, and the impact caused Plaintiff to "hit the top of his head on the dashboard." *Id*.;

---

[1] The Court scheduled a hearing on Allstate's motion for January 22, 2025. Allstate's counsel appeared for the hearing, but Plaintiff's counsel failed to appear. The Court took the motion under submission. Min. Entry, ECF No. 40.

[2] The facts are taken from the declarations and evidentiary records submitted with Allstate's motion ("Def.'s R."), ECF No. 31-6, and Plaintiff's opposition ("Pl.'s R."), ECF No. 36-2.

*see also* Decl. of J. Lloyd Buckley ¶ 2, ECF No. 36-1 ("Buckley Declaration").  When the California Highway Patrol responded to the accident, Plaintiff complained of "pain and dizziness to the top front of his head" but "refused medical attention and a medical transport to a hospital." Pl.'s R. at 7.  The third-party driver was found to be at fault for the accident, as he was driving under the influence of alcohol and exceeding the speed limit.  *Id*.

Later that day, Plaintiff sought treatment at Good Samaritan Hospital in San Jose, California, where he was diagnosed with a concussion.  Pl.'s R. at 13; Buckley Decl. ¶ 3.  He was instructed to follow up with his physician in one week and was prescribed to take one 600mg tablet of Ibuprofen every six hours as needed.  Pl.'s R. at 14; Buckley Decl. ¶ 4.  Plaintiff did not seek any medical treatment over the following seven months, until he saw a chiropractor on October 5, 2016.  Def.'s R. at 991 (reflecting treatment at Back to Back Chiropractic).  Plaintiff obtained an MRI scan at Sunnyvale Imaging on October 19, 2016.  *See id*.  Plaintiff also sought an orthopedic consultation at Allied Pain & Spine Institute, where he was recommended to undergo physical therapy.  *See id*.  Plaintiff attended physical therapy sessions at Omega Sports Rehabilitation from December 2016 to August 2017.  *Id*. (listing 28 sessions over this nine-month period).

The medical bills from Plaintiff's treatment during the 2016 to 2017 period totaled $20,583.08.  *Id*. (itemizing costs).  In March 2018, the at-fault driver's insurer settled with Plaintiff and paid the policy limit of $15,000.  Buckley Decl. ¶ 4, Ex. 3; Def.'s R. at 532-33 (3/6/2018 letter from Viking Insurance Co. with settlement check).

Plaintiff also submitted an underinsured motorist claim to Defendant Allstate, who insured Mr. Gimlan at the time of the accident.  The applicable underinsured motorist policy ("UIM Policy") provides that:

> As soon as possible any person making claim must give us written proof of claim.  It must include all details we may need to determine the amounts payable.  We may also require any person making claim to submit to questioning under oath and sign the transcript.  The insured person may be required to take medical examinations by physicians we choose, as often as we reasonable [sic] require.  We must be given authorization to obtain medical reports and copies of records.

Def.'s R. at 31.  The UIM Policy further provides that, if the insured and Allstate disagree on the

insured's "right to receive any damages or on the amount, then upon the written request of either party, the disagreement will be settled by a single neutral arbitrator." *Id*. The UIM Policy had a coverage limit of $100,000, which is "reduced by all amounts paid by or on behalf of the underinsured motor vehicle." *Id*. at 9, 30.

Plaintiff served Allstate with four policy limits demands. On February 27, 2018, Plaintiff sent Allstate his first policy limit demand. *Id*. at 353-55. Allstate promptly responded that it could "neither reject nor accept [this] demand because there is insufficient information to properly evaluate [Plaintiff's] claim," and Allstate requested additional information. Pl.'s R. at 26.

On July 16, 2020, Plaintiff sent Allstate his second policy limit demand, which relied on additional treatment Plaintiff received (or was recommended to receive) from March through June 2020 – four years after the accident. *Id*. at 28-227. Most significantly, Plaintiff saw a new doctor (Dr. Light) who recommended surgery at a cost of $200,000. *Id*. at 694-97. On July 29, 2020, Allstate responded that it needed additional time to respond to the demand because Plaintiff had not provided written discovery responses and had not been made available for a deposition or Allstate's independent medical examination. *Id*. at 229-30.

On February 20, 2021, Plaintiff sent Allstate his third policy limit demand, also premised on Dr. Light's recommendation of surgery. *Id*. at 232-72. Allstate responded on February 23, 2021, noting that Plaintiff had still not appeared for a deposition, which had been rescheduled six times already. *Id*. at 439. On April 12, 2021 – less than two weeks after taking Plaintiff's deposition – Allstate made an offer of $5,000. Def.'s R. at 810, 966-68

On June 24, 2021, Plaintiff sent Allstate his fourth policy limit demand, which attached new medical records reflecting that Plaintiff had proceeded with the surgery in May 2021. Pl.'s R. at 450-52. Allstate sent these records to one of its independent medical examiners, Dr. McCormack, who opined that the surgery and other treatment performed years after the accident was not necessary or related to Plaintiff's mild injuries from the accident. Def.'s R. at 1027-29. Allstate repeated its settlement offer of "$5,000 in new money" to cover the difference between the $20,583.08 Plaintiff incurred in medical costs in 2016 and 2017 and the $15,000 settlement Plaintiff received from the at-fault driver's insurer. *Id*. at 822.

3

1     When Plaintiff did not accept this offer, Allstate attempted to resolve the claim through
2 arbitration, as provided by California law and the UIM Policy. The arbitration never happened,
3 though, because Plaintiff repeatedly failed to comply with arbitration-related deadlines and
4 postponed the arbitration date three times. *See infra* Section IV.A. On April 5, 2023, within a
5 week after Plaintiff postponed arbitration for the third time, Allstate tendered the remaining
6 $85,000.00 policy limit to Plaintiff. Buckley Decl. ¶ 12; Pl's R. at 659.

7     On May 26, 2023, Plaintiff filed the complaint in this action asserting claims for breach of
8 contract, breach of the implied covenant of good faith and fair dealing, and bad faith denial of his
9 UIM claim. Compl. ¶¶ 41-63, ECF No. 1. Allstate moves for summary judgment on all claims.

## II.   LEGAL STANDARD

A court may grant summary judgment on any issue, claim, or defense if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The moving party bears the initial burden of demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may satisfy this burden in different ways depending on whether it has the burden of proof at trial. If the moving party bears the burden of proof at trial, it must cite to "particular parts of materials in the record" to demonstrate that no reasonable trier of fact could find for the non-moving party. Fed. R. Civ. P. 56(c)(1)(A). By contrast, if the non-moving party bears the burden of proof at trial, the moving party need only demonstrate that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B).

Once the moving party has met its burden, the burden shifts to the non-moving party to designate specific facts showing that there is a genuine dispute. *Celotex*, 477 U.S. at 324. To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to survive summary judgment. *Anderson*, 477 U.S. at 252. Instead, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.*

In determining whether there is a genuine dispute of material fact, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). The court does not "engage in credibility determinations or weigh evidence." *Munden v. Stewart Tit. Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). "The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also* Fed. R. Civ. P. 56(c)(3).

## III. EVIDENTIARY OBJECTIONS

Before reaching the merits of Allstate's motion, the Court addresses Allstate's objections to two declarations submitted with Plaintiff's opposition brief. At summary judgment, the focus is not "on the admissibility of the evidence's form," but rather "on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001). An affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

First, Allstate contends that the Buckley Declaration is inadmissible because Buckley, Plaintiff's counsel, was not involved in the underlying UIM claim proceedings and thus lacks personal knowledge of the facts in his declaration. Reply at 2. The Court overrules this objection. In general, the Buckley Declaration contains basic procedural facts about the UIM claim, and the facts are supported by documentary evidence attached as exhibits to the declaration. *See, e.g.*, Buckley Decl. ¶¶ 2-12 (detailing the automobile accident, Plaintiff's policy limit demands, and the

5

1    discovery process, with citations to documents in the record).  Although the form of the

2    declaration may be inadmissible to the extent that Buckley lacks personal knowledge of the facts

3    asserted in it, Allstate has not demonstrated that the content of the declaration is inadmissible.

4    　　　　Allstate also objects that "Buckley's opinion about liability and unreasonable delay are

5    inadmissible legal conclusions and improper opinion."  Reply at 3.  The Court agrees that certain

6    parts of the Buckley Declaration offer improper legal conclusions.  Specifically, Buckley declares

7    that Allstate "tortiously breached its implied covenant of good faith and fair dealing arising from

8    the insurance contract by unreasonably withholding benefits due under the policy[.]"  Buckley

9    Decl. ¶ 5; *see also id*. ¶ 6 ("Plaintiff contends that Allstate's withholding of benefits here is/was

10   unreasonable.").  These quoted portions of paragraphs five and six of the Buckley Declaration are

11   inadmissible, and the Court will not consider them.  *Hangarter v. Provident Life & Accident Ins.*

12   *Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("[A]n expert witness cannot give an opinion as to her

13   *legal conclusion*, *i.e*., an opinion on an ultimate issue of law." (quoting *Mukhtar v. Cal. State*

14   *Univ., Hayward*, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002))); *Keshish v. Allstate Ins. Co.*, 959 F.

15   Supp. 2d 1226, 1240 (C.D. Cal. 2013) ("Courts frequently exclude conclusory expert testimony

16   that an insurer has acted in bad faith on the ground that the opinion is nothing more than a legal

17   conclusion."); *Chateau Chamberay Homeowners Ass'n v. Assoc. Int'l Ins. Co*., 90 Cal. App. 4th

18   335, 349-50 (2001).  Moreover, even if the Court considered them, these inadmissible portions of

19   the Buckley Declaration do not create a genuine dispute on any issue because they lack factual

20   content.  *Keshish*, 959 F. Supp. 2d at 1240-41.  The Court further addresses the Buckley

21   Declaration in discussing the evidence below.  *See infra* Section IV.A.

22   　　　　Second, Allstate contends that the three-page Declaration of Yeney Crespo, ECF No. 36-3

23   ("Crespo Declaration"), "violates every imaginable rule of evidence and is totally inadmissible."

24   Reply at 3, ECF No. 38.  The Court agrees that the following portions of paragraph three of the

25   Crespo Declaration contain inadmissible legal conclusions, and the Court will not consider them:

26   "the evidence is overwhelming in this case that Defendant breached its duties and obligations

27   owed to Mr. Vanderloo pursuant to the implied covenant of good faith and fair dealing" and "this

28   conduct . . . violates the implied covenant of good faith and fair dealing."  Crespo Decl. ¶ 3.

6

Although Plaintiff does not cite or reference the Crespo Declaration even once in his opposition, the Court has reviewed the declaration in ruling on Allstate's motion. The admissible portions of the Crespo Declaration are conclusory and totally lack factual support. *See, e.g.*, *id*. ¶ 6 (asserting that the "investigation in this case was both biased and inadequate" and Allstate's "flawed process produced flawed conclusions"); *see also id*. ¶ 3 ("The evidence is clear that Plaintiff promptly reported the claim and thereafter cooperated with Defendant in providing information."). These unfounded assertions do not create a genuine dispute of fact because they lack factual content. *Keshish*, 959 F. Supp. 2d at 1240-41. The Court further addresses the Crespo Declaration below in connection with Plaintiff's argument that Allstate retained a biased independent medical examiner. *See infra* note 11.

## IV. DISCUSSION

Allstate moves for summary judgment on all claims. Allstate contends that it is entitled to judgment as a matter of law on the breach of contract claim because it paid Plaintiff the full policy limit and did not unreasonably delay payment. Allstate contends that it is entitled to judgment as a matter of law on the claims for bad faith insurance denial and breach of the implied covenant of good faith and fair dealing because it reasonably disputed its coverage obligations. Finally, Allstate contends that is entitled to judgment as a matter of law on Plaintiff's request for punitive damages. The Court addresses these issues in turn.

### A. Breach of Contract Claim

To prevail at trial on the breach of contract claim, Plaintiff must show "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

Allstate contends that "where an insurer has paid all policy benefits owed, there is no basis for a breach of contract claim." MSJ at 12. It is undisputed that Allstate paid the full policy limit. Buckley Decl. ¶ 12; Def.'s R. at 659. Therefore, Allstate argues that it is entitled to judgment as a matter of law. There appears to be a split of authority on this issue. Some courts recognize that there "can be no breach of contract where an insurer pays all benefits due." *Ives v. Allstate Ins.*

7

*Co.*, 520 F. Supp. 3d 1248, 1255 (C.D. Cal. 2021); *see also Satvati v. Allstate Northbrook Indem. Co.*, 634 F. Supp. 3d 792, 798 (C.D. Cal. 2022) (recognizing that a plaintiff was not entitled to damages because insurer "settled his claim for the Policy limit"). Other courts have held that an "unreasonable delay in paying policy benefits due" – even if those benefits ultimately are paid in full – may constitute a breach of contract. *Gentry v. State Farm Mut. Auto. Ins. Co.*, 726 F. Supp. 2d 1160, 1170 (E.D. Cal. 2010); *see also Kotler v. PacifiCare of Cal.*, 126 Cal. App. 4th 950, 956 (2005) ("The obligations of a contract . . . must be performed either at a time the contract specifies or within a reasonable time." (citing Cal. Civ. Code §1657)).

The Court will assume, for purposes of this motion, that an unreasonable delay in paying insurance policy benefits may constitute breach of an insurance policy. Even with this assumption, Allstate is entitled to summary judgment because there is no genuine dispute that Allstate diligently processed and paid the policy limit for Plaintiff's UIM claim. Plaintiff has not produced any evidence of unreasonable delay on Allstate's part. To the contrary, Allstate has produced substantial, undisputed evidence that Plaintiff and his counsel caused the delay by: (1) failing to timely provide a medical release, medical records, and wage loss information; (2) failing to timely produce discovery; and (3) repeatedly postponing arbitration.

Under California law, Plaintiff was required to promptly authorize release of his medical treatment records and to provide wage loss information to Allstate upon request. Cal. Ins. Code § 11580.2(o) (providing that arbitration of insurance claims shall be stayed until the insured complies with requests for "wage loss information," "medical treatment record releases," and "a medical examination").[3] Allstate's UIM Policy also required Plaintiff to provide "authorization to obtain medical reports" and to submit to a medical examination and a deposition. Def.'s R. at 31.

On February 26, 2016 – just two days after the accident – Allstate sent Plaintiff a medical authorization form and asked him to return it so Allstate could refer to his medical records. *Id.* at

---

[3] Plaintiff argues that section 11580.2(o) of the California Insurance Code requires an insured party to respond to "formal requests" for medical authorizations, not "emails requesting open ended medical authorizations." Opp. at 14. Plaintiff cites no legal authority for this point, and in any event, Allstate repeatedly sent formal requests for medical authorizations. *See, e.g.*, Def.'s R. at 305-09, 317-21, 581-84.

8

305-09. On March 26, 2016, Allstate sent Plaintiff another letter requesting that he complete "medical and wage authorizations." *Id*. at 317-21. Plaintiff has not cited any evidence in the record – and the Court has not identified any – reflecting that Plaintiff responded to these requests.

On February 27, 2018 – two years after Allstate first requested a medical authorization – Plaintiff sent Allstate his first policy limit demand. *Id*. at 353-55. With this demand, Plaintiff provided medical records for treatment at Allied Pain & Spine Institute, Omega Sports Rehabilitation, and Back to Back Chiropractic, as well as incomplete records from Sunnyvale Imaging and Good Samaritan Hospital. *Id*. at 358-516. Plaintiff also provided a "hipaa [sic] authorization in order for [Allstate] to obtain his MRI bill from Sunnyvale Imaging" but did not authorize Allstate to obtain any other medical records. *Id*. at 354, 517-18. The demand letter claimed that Plaintiff was also "making a lost wages claim but his proof of lost wages is still pending." *Id*. at 354. Allstate promptly acknowledged the demand the same day it was sent and reminded Plaintiff that he was required to provide Allstate with "all pertinent liability and damage documentation." *Id*. at 523.

On March 12, 2018 – within two weeks of receiving the first policy limit demand – Allstate promptly responded and requested missing information. Pl.'s R. at 26; Def.'s R. at 537. Specifically, Allstate requested treatment records from Good Samaritan Hospital (where Plaintiff received emergency room treatment immediately after the accident), "wage loss verification," and information regarding whether Plaintiff sought any other treatment between February 24, 2016 and October 2016. Pl.'s R. at 26. Plaintiff contends that he "promptly provided all requested information," Opp. at 4, ECF No. 36, but cites no evidence to support this claim.[4] Instead, the record reflects that Plaintiff did not begin to provide the requested information until August 11, 2018 – five months later – and only after Allstate sent five follow-up letters. *See, e.g.*, Def.'s R. at 538-45 (Allstate's follow-up requests on 3/30/2018, 4/27/2018, 5/23/2018, 6/28/2018, 7/18/2018);

---

[4] To the extent Plaintiff relies on the Buckley Declaration to demonstrate that Plaintiff "promptly provided all requested information," *see* Buckley Decl. ¶ 6, it offers Plaintiff no support. The Buckley Declaration cites Plaintiff's Exhibit 5, but that document reflects information Plaintiff sent Allstate on July 16, 2020 – two years and four months after Allstate requested information on March 12, 2018. *See* Pl.'s R. at 28-227.

9

*id*. at 546-50 (Plaintiff's 8/11/2018 response, providing one record from Good Samaritan Hospital); *id*. at 553-62 (Plaintiff's 10/4/2018 response, providing an additional record from Good Samaritan Hospital).

On October 18, 2018, Allstate again requested "support for the lost wages claim," including "a copy of [Plaintiff's] pay stubs" and "any disability notes or doctor[']s notes if they apply." Def.'s R. at 566. On November 12, 2018, Allstate requested a "medical authorization form" so Allstate could obtain Plaintiff's medical records for the years leading up to the accident to facilitate Allstate's independent medical examination. *Id*. at 581-84. Allstate sent multiple follow-up letters. *See, e.g.*, *id*. at 585, 589, 590, 596, 599, 610-11 (letters dated 12/11/2018, 1/7/2019, 2/4/2019, 3/5/2019, 5/7/2019, 8/21/2019, and 9/17/2019). Plaintiff has not cited – and the Court has not identified – any evidence in the record that Plaintiff responded to Allstate's repeated requests throughout 2019.

Plaintiff does not dispute that he failed to provide Allstate with the required medical authorizations. Indeed, Plaintiff admits that "his failure to provide a medical examination [sic] forced Defendant into serving dozens of subpoenas to retrieve the records needed." Opp. at 15. Plaintiff also impeded Allstate's efforts to subpoena the records from his medical providers. Plaintiff's counsel sent Allstate a letter stating that it would move to quash the subpoenas. Def.'s R. at 623-24. Plaintiff's counsel also sent letters to the medical providers instructing them not to produce the records to Allstate; Plaintiff's counsel threatened to "seek sanctions" if the records were produced. *Id*. at 625-34.

Plaintiff's delay and failure to cooperate with Allstate's investigation continued throughout 2020 and 2021 as the parties conducted discovery.[5] On January 29, 2020, Allstate served Plaintiff with form interrogatories. *Id*. at 620, 986. Plaintiff did not respond until August 19, 2020 – nearly seven months later. *Id*. at 987-98. Plaintiff requested and received five extensions of the interrogatory response deadline and then failed to respond by the agreed upon extended deadline. *Id*. at 654-56, 701. Allstate's independent medical examination of Plaintiff – originally scheduled

---

[5] Section 11580.2(f) of the California Insurance Code permits limited discovery under the California Discovery Act in connection with the UIM arbitration.

for July 2020 – was postponed to November 19, 2020. Def.'s R. at 649-62, 703-04; Buckley Decl. ¶ 8. Plaintiff's deposition was delayed by a full year – from April 2, 2020, to April 2, 2021 – due to Plaintiff's untimely responses to discovery and his cancellation of or failure to appear on the noticed dates. Def.'s R. at 1053-76 (deposition notices); *see also id*. at 654-56, 703-04, 775-76.[6]

Finally, Plaintiff's delays continued from 2021 through April 2023 as Allstate attempted to resolve Plaintiff's claim through arbitration. Plaintiff focuses on this period as his strongest evidence of delay, contending that "Allstate unreasonably withheld the owed benefits under the policy for almost two years after the investigations were completed" in 2021. Opp. at 15. But the undisputed facts preclude any genuine dispute of Allstate's diligence during this period. On April 12, 2021 – less than two weeks after taking Plaintiff's deposition – Allstate made an offer of $5,000. Def.'s R. at 810, 966-68 (reflecting a $22,000 valuation of Plaintiff's claim, subtracting offsets for compensation already provided). *Id*. On May 17, 2021, after Plaintiff did not accept the offer, Allstate sent Plaintiff a letter "to propose arbitrators so that we may move this case towards conclusion." *Id*. at 810; *see also id*. at 813, 824 (6/1/2021 and 8/25/2021 follow-up letters regarding arbitration).[7]

Despite Allstate's diligence, the UIM claim never proceeded to arbitration. The undisputed facts reflect that arbitration was repeatedly postponed and delayed due to Plaintiff's failure to comply with arbitration deadlines. Indeed, Plaintiff's counsel admits that arbitration was

---

[6] Plaintiff claims that Allstate delayed in responding to the second policy limit demand, which Plaintiff sent on July 16, 2020. Buckley Decl. ¶ 7. But Allstate responded less than two weeks later, on July 29, 2020, and explained that it was still waiting for long-overdue information from Plaintiff that Allstate needed to assess the policy limit demand. Pl.'s R. at 229-30. Specifically, Plaintiff had not served written discovery responses, Plaintiff's deposition was "rescheduled multiple times," and Plaintiff's independent medical examination was delayed as a result. *Id*.

[7] Plaintiff claims that Allstate delayed in responding to the fourth policy limit demand, which Plaintiff sent on June 24, 2021. Opp. at 5; Pl.'s R. at 450-60. Allstate responded on July 6, 2021, and asked for 30 days to accept or reject the policy limit demand because Plaintiff had "provided new information, including medical records and bills, with the demand." Pl.'s R. at 654-56. Allstate provided the new information to Dr. McCormack, one of its independent medical examiners, who reviewed the information and issued a supplemental report on August 4, 2021. Def.'s R. at 1027-29. On August 5, 2021, Allstate responded to the policy limit demand with a settlement offer of "$5,000 in new money" based on Dr. McCormack's opinion that Plaintiff's 2021 surgery was unrelated to the 2016 accident. Def.'s R. at 822. These undisputed facts demonstrate diligence, not delay.

"continued . . . mainly due to Plaintiff's counsel limited availability for expert discovery and arbitration proceedings." Opp. at 5.

The parties initially agreed to an arbitration date of February 2, 2022. Def.'s R. at 834-35. Plaintiff's counsel requested to continue arbitration after missing deadlines to exchange expert designations and witness lists. *Id*. at 842-52. For months, Plaintiff's counsel did not offer new arbitration dates. Once Plaintiff's counsel finally reengaged, the parties ultimately agreed to a new arbitration date of November 30, 2022. Def.'s R. at 865, 885. Once again, Plaintiff missed the deadline to exchange expert designations. Def.'s R. at 890-91, 894-96. Plaintiff requested "to postpone arbitration" to "no earlier than May 2023." Def.'s R. at 908-09. Allstate resisted another continuance, *id.*, but the parties ultimately agreed to a new arbitration date of May 9, 2023, Def.'s R. at 912, 918-20. On March 30, 2023, Plaintiffs' counsel informed Allstate that the May 9, 2023 arbitration would need to be postponed once again because Plaintiff's counsel had another trial that day, and counsel would "probably take a few days off afterwards." Def.'s R. at 942. On April 5, 2023 – less than a week after Plaintiff's third postponement of arbitration – Allstate tendered the policy limit of $85,000. Def.'s R. at 945-50. Based on these facts, Plaintiff's assertion that Allstate "challenged Plaintiff to invest thousands of dollars" and then capitulated "at the 11th hour on the eve of Arbitration," Opp. at 5-6, is fanciful, if not frivolous.

Plaintiffs argue that the facts in this case are "very similar" to those in *Simmons v. Liberty Mutual Fire Insurance Co.*, No. 21-cv-02215-TLN-DMC, 2023 WL 5242671 (E.D. Cal. Aug. 15, 2023). Opp. at 9. In that case, the court found triable issues as to whether an insurer's "delay in retaining a physician to conduct an independent medical examination was reasonable." *Simmons*, 2023 WL 5242671, at *6. The insurer initially rejected the plaintiff's demand without consulting an independent medical examiner. *Id*. The insurer ultimately retained an independent medical examiner "almost eight months later," and it took the examiner another eleven months after being retained to issue a report on the plaintiff's claim. *Id*. at *6-7. The insurer offered "no explanation for the delay." *Id*. at *7. By contrast, here, every arguable delay is attributable to Plaintiff, not Allstate. Plaintiff does not argue, let alone produce evidence to support, that Allstate failed to diligently retain an independent medical examiner.

12

Based on the extensive undisputed facts detailed above, there is no genuine dispute that Allstate diligently processed Plaintiff's UIM claim. "[Allstate] was at all times highly responsive and in fact it was [Allstate] who was often left waiting for a response or sending follow-up reminders and requests to Plaintiff and his counsel." *Levy v. Safeco Ins. Co. of Am.*, No. 21-cv-08520-SSS-Ex, 2022 WL 17905542, at *8 (C.D. Cal. Sept. 14, 2022) (granting summary judgment for insurer on bad faith claim). The undisputed facts demonstrate that Plaintiff and Plaintiff's counsel delayed and impeded Allstate's efforts to gather necessary medical records and wage loss verification and other discovery until April 2021. Plaintiff's counsel further delayed Allstate's efforts to resolve the claim in arbitration from April 2021 through April 2023 by repeatedly missing arbitration-related deadlines and postponing arbitration three times, over Allstate's objections. Accordingly, Allstate is entitled to summary judgment on Plaintiff's breach of contract claim.

### B. Bad Faith Claims

To prevail on a claim for bad faith insurance denial or breach of the implied covenant of good faith and fair dealing,[8] Plaintiff must show: (1) benefits due under the policy were withheld; and (2) that the reason for withholding benefits was unreasonable. *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720 (2007). A withholding of benefits may be unreasonable if the insurer: (1) fails to "give at least as much consideration to the interests of the insured as it gives to its own interests"; (2) fails to fully investigate the grounds for denying a claim; (3) "ignores evidence available to it which supports the claim"; (4) conducts the investigation in a biased manner; or (5) denies benefits "on a basis unfounded in the facts known to the insurer, or contradicted by those facts." *Id.* at 720-21.

"The key to a bad faith claim is whether or not the insurer's denial of coverage was reasonable. Under California law, a bad faith claim can be dismissed on summary judgment if the

---

[8] The complaint alleges bad faith insurance denial and breach of the implied covenant as separate claims, but they are one and the same. *Hangarter*, 373 F.3d at 1009 ("A cause of action for breach of the implied covenant of good faith and fair dealing in the insurance context is characterized as insurance bad faith, for which a plaintiff may recover tort damages.").

13

defendant can show that there was a genuine dispute as to coverage." *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001); *see also Hangarter*, 373 F.3d at 1009-10. "A genuine dispute [regarding an insurer's liability] exists only where the insurer's position is maintained in good faith and on reasonable ground." *Wilson*, 42 Cal. 4th at 723-24. An insurer may demonstrate that it denied benefits in good faith by relying on the opinion of an independent medical examiner. *Guebara*, 237 F.3d at 993; *Fraley v. Allstate Ins. Co.*, 81 Cal. App. 4th 1282, 1292 (2000). However, summary judgment for the insurer is inappropriate if the insurer "dishonestly selected its experts," the insurer's experts were "unreasonable," or "the insurer failed to conduct a thorough investigation." *Guebara*, 237 F.3d at 996.

### 1. Allstate produced substantial evidence that it reasonably relied on its independent medical examiners.

Here, Plaintiff argues that Allstate acted in bad faith by conducting a biased investigation that relied on a biased independent medical examiner. Opp. at 11-13.[9] Allstate has produced substantial evidence to support that it reasonably relied on two independent medical examiners – Dr. McCormack and Dr. Schick – to contest coverage of Plaintiff's UIM claim. Each medical examiner was eminently qualified to opine on Plaintiff's UIM claim. Dr. McCormack obtained his medical degree from Columbia University; he is a board-certified neurosurgeon with more than 30 years of experience. Pls.' R. at 662. He performs hundreds of surgeries each year and sees 80 to 90 new patients each month. *Id*. at 663. Dr. Schick obtained his medical degree from Harvard Medical School; he has "three decades of experience as a Neuroradiologist at one of the busiest trauma centers in California," where he served as Chief of Radiology for thirteen years. Def.'s R. at 1038-39, 1045.

Both doctors thoroughly reviewed the medical evidence. On November 19, 2020, Dr. McCormack issued his original report, which concluded that Plaintiff's extensive treatment was unrelated to the accident. *Id*. at 1003-18. McCormack noted that Plaintiff was originally

---

[9] To the extent that Plaintiff bases his bad faith claims on delay, that claim fails because there is no genuine dispute that Allstate diligently processed and paid Plaintiff's UIM claim. *See supra* Section IV.A.

diagnosed in February 2016 with a "very mild" concussion that was "anticipated to resolve in a few weeks." *Id*. at 1017.  Dr. McCormack also noted that Plaintiff's "[l]ack of any follow-up medical care for seven months" was consistent with a minor injury.  *Id*.  Dr. McCormack reviewed MRI records and found the results to be "normal for [Plaintiff's] age." *Id*. at 1020-21.

Dr. McCormack also conducted an in-person medical examination of Plaintiff.  *Id*. at 1004.  From his examination, Dr. McCormack observed:

> Mr. Vanderloo has a normal musculoskeletal and neurologic examination for a 30 year old man.  He had pain complaints and tenderness but full spinal range of motion.  I cannot verify any hand numbness on pin prick test or any imbalance on vestibular and balance testing.  There are no scars on his head where he impacted the dash.  His neck and back range of motion is normal.

*Id*. at 1017.  Dr. McCormack also observed that Plaintiff's self-reported symptoms were inconsistent with his medical examination and Plaintiff's prior statements to his own medical providers.  *Id*. at 1017-18 (noting, for example, that Plaintiff's complaints of neck pain were inconsistent with his "full range of motion" and lack of "prescription pain medication use").

Dr. McCormack issued four supplemental reports to address new evidence as it became available.  *Id*. at 1020-21, 1026-29 (supplemental reports dated 12/6/2020, 3/3/2021, 4/27/2021, and 8/4/2021).  Dr. McCormack reviewed and analyzed all available medical records that Allstate subpoenaed from twelve different medical providers (674 pages in total), as well as Plaintiff's deposition transcript.  *Id*. at 1026, 1030-35.  Based on all the evidence and his own examination, McCormack consistently concluded that Plaintiff had sustained mild injuries that would be expected to resolve shortly after the accident.  *Id*. at 1018, 1026.  In Dr. McCormack's opinion, Plaintiff's substantial follow-up treatment was unrelated to the accident.  *Id*. at 1021, 1028.

On October 21, 2021, Allstate obtained a report from Dr. Schick.  *Id*. at 1038-48.  Dr. Schick reviewed all relevant radiology evidence and concluded that there was "[n]o findings of an injury," just "[m]ild degenerative findings" consistent with Plaintiff's age.  *Id*. at 1040-43.  Dr. Schick's findings thus corroborated Dr. McCormack's opinions.[10]

---

[10] Plaintiff's own doctor, Dr. Light, was also "surprised that the MRI scan does not show more damage" based on Plaintiff's reported symptoms.  *Id*. at 695.

15

1     In sum, Allstate relied on two eminently qualified independent medical examiners who
2  each separately reviewed the available evidence and reached the same conclusion: Plaintiff
3  suffered mild injuries, and his follow-up treatment was not related to the accident. Based on this
4  evidence, Allstate had a genuine, good-faith basis to dispute full coverage of Plaintiff's UIM
5  claim. *Guebara*, 237 F.3d at 993; *Fraley*, 81 Cal. App. 4th at 1292.

          **2.     Plaintiff has not raised a genuine dispute of fact as to whether Allstate reasonably selected and relied upon its independent medical examiners.**

     Plaintiff has not identified any deficiency in the reports submitted by Dr. McCormack and Dr. Schick. Plaintiff has not contested either doctor's qualifications, identified any flaw in their reports or methodologies, or cited any medical evidence that either doctor failed to consider.[11] The only argument Plaintiff raises in his opposition is that Allstate "dishonestly selected" Dr. McCormack "knowing he would make a determination on which they could rely to" deny Plaintiff's claim. Opp. at 13. Plaintiff does not claim that Allstate "dishonestly selected" Dr. Schick or that Dr. Schick was biased – in fact, Plaintiff's opposition does not address Dr. Schick's report at all.

     Plaintiff has not raised a genuine dispute of fact as to whether Allstate reasonably selected and relied upon Dr. McCormack. Plaintiff has not produced any evidence at all addressing how Allstate selected Dr. McCormack for this assignment, whether Allstate has ever retained Dr. McCormack for other matters, or that Allstate instructed Dr. McCormack to reach a certain conclusion. Instead, Plaintiff cites to Dr. McCormack's decade-old deposition testimony from an unrelated case to portray him as biased. Opp. at 6, 12-13; Pl.'s R. at 660-72. Plaintiff asserts that Dr. McCormack is biased because "approximately 90 percent" of his engagements in automobile accident cases have been for the defense, and about "10 percent" are for plaintiffs. *Id*.[12] Plaintiff

---

[11] The Crespo Declaration – which is not cited in Plaintiff's opposition brief – states that "Dr. McCormack does not offer or provide any alternative explanation for how an otherwise healthy 30-year-old such as Plaintiff suffered such injuries." Crespo Decl. ¶ 5. But Dr. McCormack found, based on his independent medical examination, that Plaintiff was not seriously injured. Dr. McCormack also explained that, if the findings of Plaintiff's doctor were correct, then Plaintiff may have "herniated a disc sometime after 3/4/20," unrelated to the accident. Def.'s R. at 1028.

[12] Dr. McCormack testified that the mix of his consulting matters between defense- and plaintiff-

16

also asserts that Dr. McCormack personally benefits from the insurance industry because he is "part of the Kaiser Network as a treating insurance doctor." Opp. at 6. Neither of these facts create a genuine dispute about the legitimacy or accuracy of Dr. McCormack's medical opinions in this case, or whether it was reasonable for Allstate to rely on his opinions.

On this point, *Sekera v. Allstate Insurance Co.* is instructive. 763 F. App'x 629, 631 (9th Cir. 2019). In that case, the plaintiff accused the insurer's medical expert of bias "because the expert stated that he almost always works for insurance companies in insurance disputes." *Id.* at 631. The Ninth Circuit rejected this argument. It held that the insurer "was entitled to rely in good faith on its expert report" because there was "no evidence calling into question the legitimacy of the expert's assessment or the process by which the independent medical exam was initiated or carried out." *Id.* at 632. Here, similarly, Plaintiff makes bare accusations of bias unsupported by any evidence. Plaintiff has not identified any evidence undermining the legitimacy of Dr. McCormack's medical examination.

The cases Plaintiff cites are inapposite. For example, in *Hangarter*, the insurer used the medical examiner "nineteen times" in a five-year period, suggesting that the examiner's independence was compromised. 373 F.3d at 1011. Moreover, the medical examiner rejected claims of total disability 100% of the time. *Id.* Finally, the insurer biased the examiner by telling him before the examination, with no basis, "that there were no objective findings for a disabling injury." *Id.* Here, by contrast, Plaintiff has not produced any evidence that Allstate retained Dr. McCormack in any other case, much less that Allstate routinely uses Dr. McCormack as a "house expert." Plaintiff has not presented any evidence that Dr. McCormack summarily or consistently rejects plaintiffs' claims. To the contrary, Dr. McCormack testified that he could think of "a number of examples where [he] told [the insurer] to settle" a claim after concluding that the plaintiff had been injured. Pl.'s R. at 667. Finally, there is no evidence that Allstate biased

---

side has varied over time and has "been closer to 70-30" at times. Pl.'s R. at 663. Dr. McCormack also testified that consulting work is just 25% of his practice, with the vast majority of his time spent on treating patients and performing surgeries. *Id.*

Dr. McCormack's examination.[13]

Accordingly, based on the undisputed facts and all evidence in the record, Allstate relied on Dr. McCormack and Dr. Schick in good faith and genuinely disputed coverage of Plaintiff's UIM claim. Therefore, Allstate is entitled to summary judgment on Plaintiff's bad faith claims.

### C. Punitive Damages

Under California law, punitive damages are available only when the plaintiff proves "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294. Punitive damages are available in this action only with respect to Plaintiff's bad faith claims; they are not available for the breach of contract claim. *Cates Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 61 (1999).

Here, because Plaintiff's bad faith claims fail as a matter of law, Allstate is entitled to summary judgment on Plaintiff's claim for punitive damages. Moreover, Plaintiff has not identified any evidence that Allstate acted with "oppression, fraud, or malice." Indeed, Plaintiff failed to even address the issue of punitive damages in its opposition brief. Accordingly, Allstate's motion for summary judgment is GRANTED with respect to Plaintiff's claim for punitive damages.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS summary judgment for Allstate on all claims and dismisses the complaint with prejudice.

**IT IS SO ORDERED.**

Dated: March 17, 2025

Eumi K. Lee
United States District Judge

---

[13] Plaintiff's other cases are inapposite, too. In *Wilson*, the insurer ignored the plaintiff's medical examiner without any basis, then later retained an independent medical examiner who *agreed* with the plaintiff's medical examiner. 42 Cal. 4th at 719, 721-22. In *Brehm v. 21st Century Insurance Co.*, the court held that a claim for bad faith insurance denial was sufficient at the pleading stage because the plaintiff alleged that the insurer conducted a "sham" medical examination. 166 Cal. App. 4th 1225, 1239-40 (2008). Here, at summary judgment, Plaintiff was required to produce some evidence to create a genuine dispute of fact.